## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| **PEOPLE OF GUAM,** | **CRIMINAL CASE NO. CF0338-22** |
| **vs.** | **DECISION AND ORDER DENYING DEFENDANT'S RELEASE ON PERSONAL RECOGNIZANCE** |
| **TIMOTHY KENIT SUTA,** (*aka* **Teemy Kend**), **Defendant.** | |

### INTRODUCTION

This matter came before the Honorable Benjamin C Sison, Jr on August 1, 2022 for a hearing on Defendant Timothy Kenit Suta's ("Defendant") Ex Parte Motion and Application for Bail Redetermination Hearing under 8 GCA § 40 50 for Release on Personal Recognizance Defendant was present via Zoom and represented by Attorney Terence Timblin The People of Guam (the "People") were represented by Assistant Attorney General Monty May The Court ruled from the bench DENYING Defendant's Motion for Release on Personal Recognizance The Court now issues this Decision and Order to memorialize its ruling and to comply with 8 GCA § 40 50(a) [1]

### BACKGROUND

In CF0338-22, Defendant is charged with POSSESSION OF SCHEDULE II CONTROLLED SUBSTANCE (as a 3rd Degree Felony), CRIMINAL MISCHIEF OF A MOTOR VEHICLE (as a 3rd Degree Felony), CRIMINAL MISCHIEF (as a Misdemeanor), two counts of FAMILY VIOLENCE (as a Misdemeanor), and ASSAULT (as a

---

[1] The statute requires "Unless the conditions of release are amended and the person is thereupon released, the judge shall set forth in writing the reasons for requiring the conditions imposed "

Misdemeanor) Magistrate Complaint (May 20, 2022) The events that led to the charges against the Defendant occurred from December, 2021 until May, 2022

On or about December, 9 2021, at or about 2 10 a m , while patrolling on Route 8 in the Maite area, officers were flagged down by an individual identified as Xiaool Wu ("Wu") who was in the parking lot of the BHP Complex *Id* Wu pointed to the Daily Bread Bakery where they met Ezekiel Benitez Domaoal ("Ezekiel") ("Victim 1") who told them a man with a bat ran towards Robat Street *Id* Ezekial reported that he was at the bakery, his family business, he heard unknown persons arguing around 2 00 a m *Id* He reported that he looked out the bakery's front windows and saw a male and a female verbally arguing with two other males *Id* As he walked to the rear of the baker, he heard a loud noise, turned and saw an unknown male striking the bakery's front window with a bat several times, damaging them *Id* The male continued to strike other windows also damaging them while calling Ezekiel a "bitch " *Id* The male ran off *Id* Ezekial saw that all of the windows of his vehicle were also broken *Id* The owner of the bakery was identified as Emelyn Benitez Domaoal ("Victim 2") *Id* She reported to the officers that the damage sustained to the bakery was approximately $12,000 00 *Id* One witness identified the male as "Tim " *Id*

On or about December 29, 2021, at or about 3 59 p m , officers met with Joseph William Tucker ("Victim 3") at BHP Market on Robat Street *Id* He reported that while using his cell phone at the corner of the market, he was approached by a male later identified as the Defendant, saying, "you're calling the cops You're calling the cops " *Id* The Defendant then repeatedly punched him an unknown number of times about his head and face areas *Id* Officers observed a one-inch laceration above Victim 3's left eyebrow, a laceration behind the right side of his head, an abrasion to his left cheek area, and redness to his face *Id* Victim 3 also stated that he was suffering from a headache *Id* The Defendant fled, but returned holding what appeared to be a machete and calling Victim 3 and a person assisting Victim 3 out to fight *Id* They did not approach the Defendant and he fled the scene *Id* Witnesses in the area told Victim 3 that the Defendant was the same person who damaged the above bakery and vehicle *Id*

On or about February 28, 2022, at or about 4 50 a m , officers responded to a family violence complaint at a Maite Plaza Apartments residence in Mong Mong-Toto-Maite *Id* The met with Charcialeen Antonin ("Victim 4") and she reported that at about 4 40 a m on

the same date, while asleep in her residence, she received a phone call from her ex-boyfriend, the Defendant *Id* He did not live with her, nor was he allowed to be there, but he stated on the phone that he was outside and wanted something to drink *Id* She brought him a soda, he then began to argue with her about her cheating on him and threw the soda at her, but missed *Id* He also threw a metal chair *Id* She stepped back to get away, but the Defendant was able to punch her multiple times *Id* She then fell to the ground and he picked her up by her hair *Id* She was able to break away and ran into the residence to wake up her sister, identified as Sancalyn Antonin *Id* Defendant then came in, grabbed her by her hair again to drag her out the door *Id* The rest of the family started to wake up causing the Defendant to let Victim 4 go and flee the premises *Id* The officers observed swelling on the right side of her face, that her right eye was red and watery, her left knee had deep abrasions, there was a bruise on her left upper thigh, and there was also blood seen on the right side of her mouth *Id*

On or about May 18, 2022, at or about 7 40 p m , officers responded to a disturbance complaint between a male and a female at the same Maite Plaza Apartments residence described above *Id* The male suspect was still at the scene *Id* At that time, the officers met with Victim 4 who stated that the Defendant had arrived at the residence and while they spoke, he started to become angry and struck her face twice with his elbow *Id* He blocked her way back into the residence and demanded that she follow him *Id* She refused to go with him and convinced him that she needed to go into the residence *Id* While in the living room the Defendant started to punch her repeatedly *Id* The officers observed the injuries to her face, consisting of swelling to her cheek and lower lip, and bleeding from her lower lip *Id*

On or about May 18, 2022, at about 7 44 p m., Defendant was arrested and taken into custody *Id* He admitted to "elbowing" Victim 4 on this date *Id* During the search, he told the officers that they could retrieve his "piece " *Id* The Defendant said it was his "ice" pipe and straw in his front pocket *Id* The officers then located a modified glass pipe containing a black and white residue suspected to be methamphetamine and a small, cut, pink straw containing a white crystalline substance and white residue suspected to be methamphetamine *Id*

Defendant is confined pending the posting of twenty thousand dollars ($20,000) cash bail Commitment Order (May 20, 2022) Defendant filed the instant motion on July 7, 2022 The People noted their oral opposition during the Motion hearing

## DISCUSSION

Title 8 of the Guam Code Annotated § 40 15(b) provides that the Court must "order the person charged to be released on recognizance, *unless the judge determines*, in his discretion, on the basis of available information, that such a release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community " (Emphasis added) In making such a determination, the Court is guided by the following factors

(1) the nature of the offense charged, the apparent possibility of conviction and the likely sentence,

(2) the history and characteristics of the person charged, including
(A) length of his/her residence on Guam,
(B) his/her employment status and history, and financial condition,
(C) his/her family ties and relationships,
(D) his/her reputation, character, and mental and physical condition,
(E) *his/her prior criminal record*, if any, including any record of prior release on recognizance or on bail,
(F) his/her history relating to drug or alcohol abuse,
(G) the identity of the reasonable members of the community who will vouch for his/her reliability,
(H) whether, at the time of the current offense or arrest, he/she *was on probation, on parole, or on other release pending trial, sentencing, appeal or completion of sentence of an offense* under federal, state or local law, and
(I) *his/her history of compliance with other court orders*,

(3) the nature and seriousness of the danger the person would pose to the community or to any individual member thereof if released,

(4) statements of the alleged victim or others as to previous incidences of violence and threats made to the alleged victim,

(5) lethality risk assessments or other *risk assessments deemed appropriate by the Judiciary of Guam*, and

(6) any other factors which bear on *the risk of willful failure to appear* or the danger the person would pose to the community or to any individual member thereof if released

8 GCA § 40 15(c) (emphasis added)

Defendant proffers he does not have the means to pay the requested cash bail and is thus seeking release on his own recognizance or an unsecured bond Defendant requested assistance getting into drug court or a facility The Defendant did not have a Third Party Custodian at the time of the hearing

The People on the other hand argue that release on personal recognizance is not appropriate because they have a strong case against Defendant, Defendant has failed to comply with previous conditions, and has outstanding Bench Warrants The People suggest that no level of supervision is sufficient for Defendant short of being held in the Department of Corrections

The Court finds that Defendant's history indicates that the Defendant is a danger to the community Defendant is accused of two counts of family violence (as a misdemeanor) and was previously convicted of a violent crime The Court is concerned that if Defendant were released, he may pose a risk to commit other violent acts

The Court finds that the Defendant may not comply with court orders as the Defendant may be suffering from substance abuse, has a criminal history, and at the time of offense was on pre-trial release The Court is concerned that Defendant's potential substance abuse may impede him from complying with court orders Defendant was previously convicted in CM0790-15 (Assault as a Misdemeanor) Defendant has been charged in two other cases, CF0492-21 (Strangulation as a 3rd Degree Felony) and CF0491-21 (Theft By Receiving Stolen Property) The Court is concerned that Defendant has previously violated his release conditions and that he may therefore be unlikely to comply with Pre-trial conditions in the instant case Defendant's ORAS (Ohio Risk Assessment System) score is HIGH Thus, according to Guam's Pre-trial Release risk forecasting system, Defendant poses a high risk of failing to re-appear in court while on Pre-trial Release

Based on the information provided to the Court and upon the Court finding no substantial change to any of the conditions that were before the Magistrate Judge setting the bail at $20,000, and that such conditions are the least onerous conditions at this time, the Court therefore DENIES Defendant's Motion for Release

## CONCLUSION

Based on the foregoing, Defendant's Motion for Release on Personal Recognizance is hereby DENIED

SO ORDERED this ___12___ day of October, 2022. Nunc Pro Tunc August 1, 2022

_____
HONORABLE BENJAMIN C. SISON, JR.
Magistrate Judge, Superior Court of Guam